UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RONALD W. GROVOGEL,**

            Plaintiff,

v.                                  **Case No. 16-cv-1274-pp**

**JOHN DOE,
JANE DOE,
COUNTY OF RACINE,
RACINE COUNTY JAIL,
JANE DOE, Nurse of Racine County Jail Health Care Providers,
JOHN DOE, Employed by Aramark,
JANE DOE, Employed by Aramark,
CO KRIER,
DEPUTY JOHNSON,
SGT. #9161,
JOHN DOE, Jail Administrator,
AND JOHN DOE, Racine County Jail Maintenance Department,**

            Defendants.

---

**DECISION AND ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 6), GRANTING PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 8), SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1), AND DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT BY JANUARY 13, 2017, IF HE WANTS TO PROCEED**

---

The plaintiff, who is representing himself, was a prisoner at Redgranite Correctional Institution when he filed the complaint. (On December 14, 2016, the plaintiff notified the court that he had been released from Redgranite; he provided a forwarding address in Racine, Wisconsin.) The plaintiff filed this lawsuit under 42 U.S.C. §1983, Dkt. No. 1, challenging various aspects of his confinement at the Racine County Jail. He also has filed a two motions for

1

leave to proceed without prepayment of the filing fee, Dkt. No. 6, 8. This order resolves those requests, and screens the plaintiff's complaint.

I. Motions for Leave to Proceed without Prepayment of the Filing Fee

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On November 8, 2016, the court ordered the plaintiff to pay an initial partial filing fee of $23.37. Dkt. No. 12. The plaintiff paid that fee on November 30, 2016. Accordingly, the court will grant the plaintiff's second motion for leave to proceed without prepayment of the filing fee. The court will deny as moot the first motion as moot. The court will require the plaintiff, who is no longer incarcerated, to pay the remainder of the filing fee ($327.63) to the court, as he is able.

II. Screening of the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

3

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A. The Plaintiff's Allegations**

The plaintiff was confined at the Racine County Jail from June 20, 2015, through June 18, 2016. He alleges that various aspects of the conditions of his confinement violated his rights. Dkt. No. 1 at 5, 6.

First, the plaintiff alleges that he suffered from migraine headaches, accompanied by vomiting and pain, for eight months, beginning in October 2015. Id. at 5. He wrote to the nurse about a diet change, because by "trial and error" the plaintiff had noticed that he was allergic to processed meats. Id. The

4

nurse told him that he couldn't request a special diet, contrary to the Jail's policy handbook, which said that he could. Id. The plaintiff had to purchase "extra commissary at ridiculously exorbitant prices." Id. After his last bout with pain and vomiting, the plaintiff contacted Officer Laux (not a defendant), who called the nurse. The nurse advised the plaintiff to save his vomit for analysis the next time he vomited. The plaintiff wrote another request to the nurse, stating that he was going to talk to a lawyer. Several days later, a nurse questioned the plaintiff about his diet. The plaintiff states that in April 2015, he finally received a diet that he could eat, and that after that, he had no further problems. (Presumably, the plaintiff means April 2016.)

Second, the plaintiff alleges that shortly after arriving at the Jail he started having anxiety and depression, because he could not sleep. Id. at 6. The plaintiff was housed in dorm 3EW, which he alleges is a "total zoo," and which is said to be the worst pod in the Jail. Id. The dorm has fights, thefts, and "absolutely no structure." Id. Numerous times the plaintiff went for a full week with "nothing more than a nap here and there." Id. After talking with Officer Laux about the situation, the plaintiff was prescribed medication for his depression and anxiety, and the dosage was subsequently increased. Staff instituted "group punishment" on the dorm, so the plaintiff ended up losing what small privileges he had due to the actions of other inmates. Id. During the "lockdown" period between midnight and 6 a.m., the rule was no loud talking, movement, or going to lockers because the time was for sleeping. Id. Inmates would use electrical outlets to light their smoking materials and, as a non-

5

smoker, the plaintiff detested this. Id. The third-shift correctional officers turned a blind eye to inmates' loud and unruly behavior. Id.

Third, the plaintiff alleges that the Jail's food often included insects, worms, or "what resembled pubic hair." Id. at 7. He and other inmates notified correctional officers about the issue, which would often lead to arguments between the officer and the inmate. Id. In addition, sometimes the food was cold or not thoroughly cooked. Id. Defendant Officer Krier took a photo of a worm found in chicken. Id.

Fourth, the plaintiff alleges that the Jail does not permit inmates to exercise indoors or outdoors. Id. He received numerous warnings about exercising in the pod. Id. In addition, the air quality "was horrendous." Id. The "often stagnant air was extremely dusty, secondhand smoke filled at times, the intake vents were regularly covered in a blanket of dust." Id.

Fifth, the plaintiff alleges that he and other inmates had no privacy because Jail staff required them to defecate and shower in the open. Id. The plaintiff asked defendant Officer Krier about inmate privacy rights and "who [our] bunkmate is," and Krier said that inmates have no rights. Id. The plaintiff filed a grievance, and defendant Sergeant #9161 confirmed Officer Krier's declaration. Id.

Sixth, the plaintiff alleges that in May 2015 (presumably, he means May 2016), he slipped and fell, injuring his shoulder. Id. at 8. He had informed Officer Laux and the maintenance staff about a leaking shutoff valve on the wall for the sink. Id. The plaintiff apparently slipped and fell while exiting the bathroom. Id. The pain didn't go away, so he wrote to the nurse who gave him

6

an anti-inflammatory steroid and told him to rest his shoulder for six to eight weeks. Id. The pain has not subsided, and the plaintiff is scheduled for a nerve test of his left arm and neck. Id.

Seventh, the plaintiff alleges that in May 2015 (presumably, he means May 2016), several inmates burglarized his locker. Id. After video footage confirmed the incident, the plaintiff gave a statement defendant Deputy Johnson. Id. The plaintiff was moved to "3EE per classification/safety." Id. A sergeant decided not to prosecute the burglary. Id. The plaintiff filed a grievance, but he was transferred to Dodge Correctional Institution before receiving a response. Id. "[T]his blatant dereliction of deliberate indifference undermines the integrity in which those who are there to ensure proper punishment for the crimes committed are also responsible for the customary policies that are manifested in the everyday workings of a jail atmosphere." Id.

For relief, the plaintiff seeks monetary damages and injunctive relief.

**B. Analysis**

First, with regard to the plaintiff's claim that he suffered from ongoing migraines, pain, and vomiting, he does not allege deliberate indifference on the part of any defendant. The closest he comes to alleging deliberate indifference is the nurse's comment to save his vomit, but the plaintiff also alleges that shortly after he received that advice, a nurse visited him, and he was given a new diet. Rather than alleging deliberate indifference, the plaintiff alleges that staff responded to his condition. The court will not allow the plaintiff to proceed on this claim.

Second, the plaintiff complains of the loud and chaotic conditions in Dorm 3EW, which prevented him from getting regular sleep and caused him to suffer depression and anxiety. Lack of sleep due to excessive noise can form the basis for a claim. See Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir. 1996). The plaintiff alleges that third shift correctional staff "turned a blind eye" to inmates' nighttime chaos. The plaintiff also alleges, however, that Jail staff treated him for his emerging anxiety and depression, and that Jail staff attempted to control the chaos by instituting "group punishment." If the plaintiff wants to proceed on this claim, he will need to tell the court specifically which staff members refused to take action, and why he believes that refusal was deliberate.

Third, the plaintiff's allegations that the defendants served him food contaminated with foreign objects does implicate his constitutional rights, because prisons and jails have an obligation to provide nutritionally adequate food. See Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015); see also Antonelli, 81 F.3d at 1432 (citing French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)). But the plaintiff doesn't allege that he ate the food, or that the food made him sick. He does not explain whether officers offered him replacement food, or whether he notified them of the contaminated food. If the plaintiff wishes to proceed on this claim, he needs to explain whether he ate any of the contaminated food and how it affected him, or whether being served contaminated food caused him to miss any meals. The plaintiff also should provide as much information as he can about the personal involvement of

defendants involved in this claim—who served him contaminated food? To whom did he complain? What did those people do?

Fourth, the plaintiff's allegations that he received warnings about exercising and that he was not allowed to exercise may state a claim. See Delaney v. DeTella, 256 F.3d 679, 683-84 (7th Cir. 2001). His allegations that the Jail had horrendous air quality may also implicate the Constitution. See Vasquez v. Frank, 290 Fed. Appx. 927, 929 (7th Cir. 2008). Again, though, the plaintiff does not allege that he suffered any harm from these situations, and he does not tell the court who warned him about exercising, who prevented him from exercising, who exposed him to the bad air, or who he complained to and how they responded. The plaintiff may provide more details about these claims if he wants to proceed.

Fifth, the plaintiff's allegations that he did not have privacy while going to the bathroom and while showering do not make out a constitutional violation. See Sanders v. Kingston, 53 Fed. Appx. 781, 784 (7th Cir. 2002) (prisoners entitled to little if any privacy, even when using the bathroom or taking a shower) (citing Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995)). The court will not allow the plaintiff to proceed on this claim.

Sixth, with regard to the slip and fall allegation, the plaintiff does not allege a sufficiently serious condition to invoke the Constitution. See Pyles v. Fahim, 771 F.3d 403, 410-11 (7th Cir. 2014). Moreover, he does not seem to be challenging the medical care he received for his injury. The court will not allow the plaintiff to proceed on this claim.

9

Case 2:16-cv-01274-PP   Filed 12/23/16   Page 9 of 11   Document 14

Seventh, the plaintiff's allegations that a sergeant failed to prosecute the inmates who allegedly burglarized him does not state a constitutional violation.

**C. Conclusion**

If the plaintiff wants to proceed on the claims the court did not deny above, he must file an amended complaint providing the additional information the court identified. He must file that amended complaint on or before **January 13, 2017**. Failure to file an amended complaint within this time period may result in the court dismissing the case.

The amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint, and ***must be complete in itself without reference to the original complaint***. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998). If the plaintiff files an amended complaint, the court will screen it pursuant to 28 U.S.C. §1915A.

**ORDER**

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 6.

The court **GRANTS** the plaintiff's second motion for leave to proceed *in forma pauperis*. Dkt. No. 8.

The court **ORDERS** that on or before **January 13, 2017**, the plaintiff shall file an amended pleading, containing the additional information described above.

The court **ORDERS** that the plaintiff submit the $327.63 balance of the filing fee to the Clerk of Court.

The court **ORDERS** that the plaintiff submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Failure to make a timely submission may result in the the court dismissing the for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 23rd day of December, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge